325 P.2d 716

Floyd T. KENNEDY, Plaintiff-Appellant,

v.

C. .T. JUSTUS and Arron Justus, Defendants-Appellees.

No. 6314.

Supreme Court of New Mexico.

May 9, 1958.

Mears & Mears, J. Fred Boone, Portales, for appellant.

Hartley, Buzzard & Patton, Clovis, J. T. Morgan, Portales, for appellees.

BRAND, District Judge.

Plaintiff-appellant is a real estate broker in Portales, New Mexico, and brought this action for a commission alleged to be due him from the defendants C. T. Justus and Arron Justus, father and son, for having been the procuring cause of a sale of 160 acres of land owned by the father. Plaintiff had been given a written listing of the farm which was signed, "C. T. Justus, Owner, by Arron Justus". Two sons lived on the land and had during the past several years listed it for sale with other brokers

and had represented that they had authority from their father, who lived in Texas, to offer the farm for sale. The father denied the agency of his son and asserted that he never authorized or permitted him to list the property for sale.

Plaintiff adduced testimony to show that C. T. Justus, the father, had during the past several years advised him and other real estate brokers that his sons had authority to list the farm for sale; that his two boys had an interest in the property; and, that any transactions had with the boys would be satisfactory with him.

Our statute governing such matters reads as follows:

"Real estate brokerage agreements required to be in writing.—Any agreement entered into subsequent to the first day of July, 1949, authorizing or employing an agent or broker to purchase or sell lands, tenements, or hereditaments or any interest in or concerning them, for a commission or other compensation, shall be void unless the agreement, or some memorandum or note thereof shall be in writing and signed by the person to be charged therewith, or some other person thereunto by him lawfully authorized. No such agreement or employment shall be considered exclusive unless specifically so stated therein." § 70–1–43, N.M.S.A.1953, Compilation.

On objection being made by defendants to the introduction of the line of testimony mentioned above, the Court said in answer to the argument of plaintiff's attorney:

"Do you contend that the words 'lawfully authorized' in the statute can be proven by parol or must it be a written instrument such as a power of attorney?"

And further, when plaintiff's attorney quoted from a New Mexico case which held "an agency may be established by circumstantial evidence," the court replied:

"That would have been before this statute that was passed in 1949, Mr. Boone."

Ruling on the admissibility of this and similar testimony was reserved, but at the conclusion of the trial, the court found that a sale had been brought about through plaintiff's efforts but that the owner had not listed the property with plaintiff either in person, in a manner required by statute, nor by any other person lawfully authorized by him as required by statute, and dismissed the complaint. The court also stated, after announcing its decision:

"* * * and the Court regrets that it cannot give the plaintiff the relief which he has earned but which he is barred from claiming by virtue of the statute of this state passed in 1949, requiring a listing to be in writing, signed by the person to be charged or by someone lawfully authorized by

134

him. The Court cannot extend the language of the statute. If the Court could, the Court would certainly require these defendants to pay what is otherwise and in all respects a just debt."

It is apparent that the Court was persuaded that the statute in question requires not only a written listing or contract employing the broker, but also a writing, such as a power of attorney, to evidence the authority of the agent who lists property for an owner. We find this not to be a proper construction of the statute but conclude that such a listing is binding on the principal if the purported agent was in fact an agent for such purpose under the general law of agency, and such an agency may be created by parol or estoppel, and proven by circumstantial evidence.

"An agency may be created by active consent of the principal and agent, by operation of law, by estoppel, or by ratification. There is no particular mode by which an agency must be established, although * * * in a few special instances the law requires a particular form of appointment." 2 C.J.S. Agency § 20, p. 1044.

"As a contract of agency is not one which is required by the statute of frauds to be in writing, except under some circumstances and for some purposes, * * *. the authority may be conferred orally. * * *" 2 C.J.S. Agency § 26, p. 1055.

Our court has said that the analogy between this statute and the Statute of Frauds is strong, and it has been called "an extension of the Statute of Frauds".

Section 4 of the English statute pertains to "any contract or sale of lands", etc., and concludes with the language, "unless the agreement * * * shall be in writing and signed by the party to be charged therewith, or *some other person thereunto by him lawfully authorized.*" Thus it will be seen that our Brokers' Act uses the exact wording of the English statute in referring to the qualifications of an agent.

In treating of this class of legislation, it is said:

"In many jurisdictions statutes have been enacted expressly requiring contracts, for the employment of another as agent in negotiating a purchase or sale of real estate, to be in writing. Most of these statutes go to the right of the broker to recover commissions and have generally been upheld as a justifiable exercise of the police power in regulation of a calling which experience has proven to be a very prolific source of litigation founded upon fraud and perjury. * * * Sec. 25— Statutes requiring contracts for the employment of brokers to be in writing are in derogation of the common law

and should be strictly construed. * *"
8 Am.Jur. p. 1002.

We find also that the courts have generally held it unnecessary for an agent's authority to be written to enable him to bind his principal to contracts within the various Statutes of Frauds:

"Almost, although not entirely, without exception, it is held that written authority is not necessary to enable an agent to sign the memorandum required by the statute, unless the particular section of the statute in question expressly states that the agent's authority must be in writing. According to the great weight of authority, where the statute merely requires that the contract be signed by the party to be charged or his duly or lawfully authorized agent, it is not necessary that the agent's authority be conferred by writing. This rule is based on the fact that the statute was not intended to change the law of agency, and except where it expressly provides otherwise, the authority of an agent to make a contract within the purview of the statute may be proved in the same manner as it might have been in the absence of the statute." 49 Am.Jur., Statute of Frauds, § 405 and cases cited.

Our Court said in Harris v. Dunn, 55 N. M. 434, 234 P.2d 821, 822, 27 A.L.R.2d 1277:

"Indeed, the Act relied upon by defendants does not purport to render void every agreement respecting the sale or purchase of real estate in which an agent has had a part, unless in writing. It seems clear enough that what the legislature intended to nullify was *oral agreements to pay a commission.*" citing, to the same effect, Krzysko v. Gaudynski, 207 Wis. 608, 242 N.W. 186, 189.

In Ginn v. MacAluso, 62 N.M. 375, 310 P.2d 1034, 1038, a real estate broker's action against a husband and wife for a commission on sale of property, the memorandum or listing was signed by the wife, writing her husband's name only, with the verbal consent of the husband but not in his presence. The court held the husband to be bound by the wife's action although she was found not liable, stating:

"True enough, she signed the document but she did not affix her signature. Instead, she signed the name of her husband, as the defendants' testimony discloses, by his express consent and direction. If so, and the jury so finds, there can be no doubt of his liability under the statute."

It is held in all jurisdictions which have passed upon this question that the language of the statute "or by some other person thereunto lawfully authorized" means simply "by an agent", and that such agent may be verbally authorized to act for his princi-

136

pal. No authority to the contrary has been cited, and, indeed counsel for appellees concede the point by stating in their brief:

"However, in answer to this point, the appellees will not argue that it is necessary for a principal to give his agent written authority to list lands with a real estate broker before the agent can bind the principal to pay the real estate commission."

They contend, nevertheless, that the trial court found that there was no relation of principal and agent existing between the father and son and quote in support thereof the judgment reading in part:

"That the plaintiff had not secured a written listing from the defendant nor a listing from any other person *lawfully authorized to give such a listing.*"

We are convinced that by the language italicized the court meant, as is indicated throughout the record, that the agency was required to be established by some written instrument.

We are, however, unable, on the state of the record, to render judgment here. Had the trial court been requested to find that the father had made the son his agent to list the land for sale by means other than a written instrument, its action on such request would have decided this issue. The record discloses no such request in the form required by the rules. The court was instead asked to find, as facts, the following:

"4. That for a period of at least three years prior to the filing of the complaint in this cause, Arron Justus, son of C. T. Justus, had been generally representing to real estate brokers in Roosevelt County, New Mexico, that he was part owner of the said described real estate, together with his father, C. T. Justus, and that he had full and complete authority to list same for sale, and that Arron Justus specifically represented such facts to Ben Howard and Floyd T. Kennedy.

"5. That defendant C. T. Justus knew, or should have known, that the said Arron Justus was making such representations to real estate brokers in Roosevelt County, New Mexico."

Request No. 4 sets forth evidentiary matter instead of the ultimate facts upon which to base a decision. Request No. 5 is also bad because it is not complete in itself, and is also evidentiary and not factual.

Conclusions of law were requested, reading:

"2. That at all times material hereto the said C. T. Justus and Arron Justus stood in the relationship of principal and agent.

"3. That the written listing for the sale of said lands, obtained from Arron Justus is legally sufficient and is binding on said C. T. Justus."
which were refused.

These conclusions stand alone without the support of appropriate findings of fact having been requested, and will not be considered as governing the court's decision. Moreover, they and the decision entered by the court evidently were arrived at because of the initial error into which the court fell concerning the construction and meaning of the statute in question.

It follows that the judgment will be reversed and the cause remanded. The trial court is instructed to expand its decision to include a finding of fact as to whether or not the relation of principal and agent obtained between father and son, although not founded upon a writing, whereby the son had been authorized to list the land for sale with plaintiff. If, of course, the answer to this is in the affirmative, judgment will enter for plaintiff as prayed.

It is so ordered.

LUJAN, C. J., and McGHEE and COMPTON, JJ., concur.

SHILLINGLAW, J., not participating.