376 P.2d 28

George T. KORAN, Plaintiff-Appellee,

v.

H. C. BINGHAM, Defendant-Appellant.

No. 7089.

Supreme Court of New Mexico.

Nov. 1, 1962.

Botts, Botts & Mauney, Albuquerque, for appellant.

Rueckhaus & Watkins, Albuquerque, for appellee.

SCOGGIN, District Judge.

This is an appeal from a judgment for $700.00 in favor of the plaintiff, based on the trial court's findings that the defendant, a licensed painting contractor, agreed for a given amount to paint the exterior and trim of plaintiff's house in Albuquerque, with the plaintiff to choose the color and the defendant to determine the type and manner or method of application of the paint, and that there was a failure due to the choice or type and method of application of the same.

To the plaintiff's action alleging negligence in performance, and seeking recovery of $700.00 for removal of the paint job that allegedly failed and $600.00 for repainting, the defendant, being the appellant herein, denied negligence, counterclaimed for $28.00 as representing the reasonable value of time spent in doing some repair work and brought as third-party defendant the Burton Paint and Glass Company of Albuquerque on the contention that such company sold him the paint involved with the representation that it would do the job, hold up and not peel off, as otherwise maintained in plaintiff's action.

On appeal, the defendant-appellant maintains that the trial court failed to adopt certain of his requested findings as being fully supported by the evidence, to the effect that the defendant acted as a reasonably prudent man, applied the paint in a generally accepted manner and that any failure of the job was due not to his actions, but rather to the previously applied paint resulting in a condition which was not foreseeable; and urges that the court's determination otherwise is not supported by the evidence.

In so doing, the appellant adverts to evidence tending to support his theory of the case and relies on testimony of certain paint distributors, including the third-party defendant, and a laboratory analyst who expressed the opinion that it was not the pink coat applied by the defendant but rather the previously existing green coat which failed and that the type of polyvinyl acetate

(being a water-thinned paint) used by the defendant is recommended to cover an oil-base paint such as was supposed to have existed from previous painting of the house. That there is evidence from which the trial court could have resolved the conflict in the record and have agreed with the contention of the defendant is not to be denied. Apropos of appellant's position in this respect, however, is what we said only recently in the case of Budagher v. Loe, 70 N.M. 32, 369 P.2d 485, about plaintiff's position:

"The difficulty with plaintiff's position is not that the law and facts to which our attention is called might not support his position. Its weakness lies in the fact that whereas the proof might have supported the theory of plaintiff, the trial court found otherwise, and the findings so made are in turn supported by substantial evidence. In this state of the record we are called upon to uphold the findings of the trial court. New Mexico Bus Sales v. Michael, 68 N.M. 223, 360 P.2d 639; Pentecost v. Hudson, 57 N.M. 7, 252 P.2d 511. The trial court resolved the conflict in the evidence as was its duty, and its findings being based upon substantial evidence, the same are conclusive on appeal. Peugh v. Clegg, 68 N.M. 355, 362 P.2d 510; Parks v. McIntosh, 68 N.M. 324, 361 P.2d 949; Brown v. Martinez, 68 N.M. 271, 361 P.2d 152."

By relying principally on evidence most favorable to his theory of the case and in challenging the contrary determination of the trial court, the appellant overlooks the fundamental rule of our appellate procedure that where there is conflict in the evidence, as there was here, all conflicts must be resolved in favor of the successful party, and all reasonable inferences indulged in to support the judgment, and all evidence to the contrary disregarded. Nally v. Texas-Arizona Motor Freight, Inc., 69 N.M. 491, 368 P.2d 806; Sands v. Sands, 48 N.M. 458, 152 P.2d 399; Cochran v. Gordon, 69 N.M. 346, 367 P.2d 526. Nor will we substitute our judgment for that of the trial court as to credibility of witnesses. Drake v. Rueckhaus, 68 N.M. 209, 360 P.2d 395.

From a careful review of the entire record, however, we can only conclude that the trial court's determination in favor of the plaintiff and denying the counterclaim was based on substantial evidence. In 1950, the exterior of plaintiff's house appears to have been painted white with an oil-base paint; in 1955, green with an oil-base paint. In 1959, pursuant to oral agreement and for a bid price of $422.28, the defendant-appellant painted the exterior pink or buff with water-thinned polyvinyl acetate or acrylic paint. Some eight or nine months after the completion of such job by the defendant, the plaintiff complained that the paint was peeling off or flaking; and with some paint

given to him by the supplier, from whom he bought the original paint, the defendant undertook to make some repairs, with which plaintiff, who subsequently filed suit, obviously was not satisfied.

According to another licensed painting contractor with some twenty- to thirty-years experience, R. F. Estrada, who testified for the plaintiff, and who examined the house after the failure of the paint:

> " * * * And here is what appeared to me happened. The paint, the green paint that was on there, was oxidizing; they came over it with a water-base paint which did not penetrate the deterioration of the paint, which caused it to have a lack of adhesion; whereas oil-base paint is penetrating and would penetrate and bind in the powdered effect of the existing paint."

This situation, Mr. Estrada added, is well known among painting contractors. While this witness testified that he would not have done the job for $422.28, neither would he have applied the polyvinyl paint which he would not have recommended for such exterior use. Mr. Estrada also testified:

> " * * * Now, in oxidizing when this pink paint was applied over this, which it has been admitted polyvinyl acetate which has no penetration, it picks up the loose powder but does not penetrate deep enough to bond the

paint on through to the green paint. So it was lack of adhesion.

> \* \* \* \* \* \*

> "That's what caused the lack of adhesion into the base of the green paint. Now, it doesn't mean that all the green paint was oxidized, just the top surface, and this paint would not penetrate past that little top surface on there.

> \* \* \* \* \* \*

> "Q. Now, in your opinion, was there a paint failure on this particular job with relation to the pink coat of paint?

> "A. *In relation to the pink coat there was a failure in the sense that in my opinion that it was the wrong type paint placed over the existing paint and that it wasn't properly treated between the application of the polyvinyl acetate and the oil paint. There should have been a treatment between.* (Italics supplied)

> \* \* \* \* \* \*

(Cross-examination by defense:)

> "Q. Mr. Estrada, what treatment would you have given between coats before you put on the PVA, what treatment would you have given it?

> "A. I would have given it penetrating oil sealer of a clear color. If I wanted to give depth to my next coat I would put color in it, or additive.

"Q. So what you would have done would have been to put on a coat of oil sealer before you put the first coat of paint of PVA?

"A. That's right, sir."

Another witness for the plaintiff, a paint salesman, testified that his company would not recommend the use of polyvinyl acetate, which is a water-thinned paint, over an oil-base paint because he never heard of a case where water-base paint was successfully applied to an oil base, whereas he had heard of failure.

Under cross-examination by plaintiff, a paint supplier, produced as a defense witness, testified he would recommend the use of paint "if you have a good tight surface," —a condition to be determined by the painter. Another defense witness, under cross-examination, likewise testified that over a five-year period there would have been some oxidation of the oil-base paint or chalking; and while polyvinyl acetate will cover oil base, yet "there must be no chalking," and added that the weight of the pink paint applied to the previously existing green might have caused the peeling. Still another defense witness, under cross-examination, acknowledged that while he would recommend polyvinyl acetate over an oil base, yet it must be sealed with an oil primer particularly when the surface appears questionable, as the purpose of the primer is to seal down the chalk to give it a smooth surface to adhere to; whereas the defendant painter contractor testified that he did not consider an oil primer necessary in that the previously painted oil base acted as a "primer sealer."

With the testimony, already noted, of R. F. Estrada, the painting contractor who sized up the failure as resulting from the application of water-thinned or polyvinyl paint—the use of which he would not recommend for such purpose—on a previously oil-base painted surface which should have been treated and was not, with a primer seal, the trial court seemed impressed, in that at the close of all the evidence and following the appearance of such contractor as the last witness, the trial court announced his decision which reflected the very view of such witness:

"* * * I will find that Mr. Bingham (the defendant) was negligent both in the type of paint which he put over the oil base paint and I will also find that he was negligent in not putting a sealer on the base paint before he applied the PVA. I will award damages in the sum of $700.00."

Whether or not the defendant as a licensed painting contractor exercised that due care incumbent on him as such contractor or was negligent, it was for the trial court as the trier of facts in resolving all conflicts in the evidence to have determined. 38 Am.Jur. Negligence, § 34, p. 681;

Harper and James on Law of Torts, Vol. 2, § 16.6, p. 917; Westbrook v. Watts, (Tex. Civ.App.), 268 S.W.2d 694; Shearman & Redfield on Negligence, Vol. 1, § 9, p. 15. Such determination, being supported by substantial evidence, must be sustained. Entertainment Corp. of America v. Halberg, 69 N.M. 104, 364 P.2d 358.

It follows that the judgment of the trial court is affirmed.

It is so ordered.

CARMODY and CHAVEZ, JJ., concur.